No. 21-3225

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee*,

    v.

JAY LIESTMAN,

    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin,
Case No. 20-cr-65
The Honorable James D. Peterson, Presiding

_____

**SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLANT**

_____

Joseph A. Bugni
FEDERAL DEFENDER SERVICES OF
  WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, WI 53703
(608) 260-9900
joseph_bugni@fd.org

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

I.    Introduction. ..................................................................................1

II.   In response to questions 1 & 3, "relating to" must be understood in reference to
      the statute's text and context. ........................................................................3

      A.    Rooted in Fifth and Sixth Amendment concerns, the categorical
            analysis provides certainty and clarity on what triggers higher
            statutory maximums...........................................................................3

      B.    Consistent with *Mellouli* "relating to" modifies the listed conduct,
            not the statutorily defined content. ...................................................6

      C.    The decisions in Reinhart and McGrattan correctly applied the
            canons of statutory construction in holding that the content had
            to match. ...........................................................................................9

      D.    The content the state statute covers must be no broader than what
            Congress defined and the conduct must still be captured by what
            Congress  proscribed. .....................................................................13

III.  In response to question 2, this Court's analysis in Kraemer and Kaufman cannot
      be reconciled with *Mellouli*. .......................................................................15

IV.   Anticipating the government's arguments, Pugin doesn't change the analysis and
      applying *Mellouli* will not undermine the statute's purpose..................................19

V.    Conclusion ..............................................................................................22

CERTIFICATE OF COMPLIANCE AND SERVICE

FEDERAL DEFENDER SERVICES
of WISCONSIN, INC.

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Ashcroft v. Free Speech Coalition*
535 U.S. 234 (2002)..................................................................18

*Borden v. United States,*
141 S.Ct. 1817 (2021)...............................................................4

*Cochise Consultancy, Inc. v. United States ex rel. Hunt,*
139 S. Ct. 1507 (2019)..............................................................6

*Descamps v. United States,*
570 U.S. 254 (2013)..................................................................4

*Esquivel-Quintana v. Sessions,*
581 U.S. 385 (2017)..................................................................21

*Gonzales v. Duenas-Alvarez,*
549 U.S. 183 (2007)..................................................................21

*Gross v. FBL Financial Servs., Inc.,*
557 U.S. 167 (2009)..................................................................13

*Kleber v. CareFusion Corp.,*
914 F.3d 480 (7th Cir. 2019) ...................................................13

*Mellouli v. Lynch,*
575 U.S. 798 (2015)............................................................passim

*N.L.R.B. v. SW General, Inc.,*
580 U.S. 288 (2017)..................................................................13

*New York v. Ferber,*
458 U.S. 747 (1982)..................................................................11

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Pugin v. Garland,*
   143 S.Ct. 1833 (2023) ......................................................................... 19, 20

*Quarles v. United States,*
   139 S.Ct. 1872 (2019) ................................................................................ 21

*Shular v. United States,*
   140 S.Ct. 779 (2020) ..........................................................................passim

*Tanzin v. Tanvir,*
   141 S.Ct. 486 (2020) .................................................................................. 8

*Taylor v. United States,*
   495 U.S. 575 (1990) ............................................................................... 3, 4

*United States v. X-Citement Video, Inc.,*
   513 U.S. 64 (1994) .................................................................................. 11

*United States v. Bennett,*
   823 F.3d 1316 (10th Cir. 2016) ........................................... 9, 10, 11, 12

*United States v. Kaufman,*
   940 F.3d 377 (7th Cir. 2019) ............................................................passim

*United States v. Kraemer,*
   933 F.3d 675 (7th Cir. 2019) ............................................................passim

*United States v. Mayokok,*
   854 F.3d 987 (8th Cir. 2017) .................................................... 10, 11, 12

*United States v. McGrattan,*
   504 F.3d 608 (6th Cir. 2007) ................................................................... 9

*United States v. Portanova,*
   961 F.3d 252 (3d Cir. 2020) ................................................................... 12

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*United States v. Reinhart*,
  893 F.3d 606 (9th Cir. 2018) .................................................................. 9, 11, 12, 17

*United States v. Ruth*,
  966 F.3d 642 (7th Cir. 2020) .............................................................................. passim

**Statutes**

8 U.S.C. § 1227 ........................................................................................................... 4

18 U.S.C. § 2252 ................................................................................................... passim

18 U.S.C. § 2256 ................................................................................................... passim

21 U.S.C. § 802 ..................................................................................................... 6, 20

21 U.S.C. § 841 ........................................................................................................ 20

**Other Authorities**

Brief of Defendant-Appellant, *United States v. Kaufmann*, 940 F.3d 377 (7th Cir. 2019)
  (No. 18-2742), 2019 WL 1224248 ............................................................................ 17

Brief for the United States, *United States v. Kaufmann*, 940 F.3d 377 (7th Cir. 2019) (No.
  18-2742), 2019 WL 2713942 ................................................................................. 18

Reply Brief of Defendant-Appellant, *United States v. Kaufmann*, 940 F.3d 377 (7th Cir.
  2019) (No. 18-2742), 2019 WL 3240596 ............................................................... 17

Alina Das, *The Immigration Penalties of Criminal Convictions: Resurrecting Categorical
  Analysis in Immigration Law*, 86 N.Y.U. L.Rev. 1669 (2011) .................................. 3

Federal Defender Services
of Wisconsin, Inc.

**TABLE OF AUTHORITIES — Continued**

Page(s)

Bryan Garner & Antonin Scalia, *Reading Law: The Interpretation of Legal Texts* ............................................................................................................... 7, 8, 10, 14

Child Pornography Prevention Act of 1996, Pub. L.No. 104–208, § 121, 110 Stat. 3009–26 (1996) ............................................................................................................... 7, 8, 17

Federal Defender Services
of Wisconsin, Inc.

v

## I.     Introduction

This case boils down to "relating to"—specifically, how it operates when Congress uses a defined term. In the defense's view (and consistent with *Mellouli),* the term must be read in context. And within § 2252's context "relating to" does not modify the statutory definition of child pornography. That is, the *content*. Neither the Supreme Court nor this Court have ever held that "relating to" expands a statutorily defined term. Instead, "relating to" provides flexibility in applying the categorical approach to the undefined terms. That is, the *conduct*.

That point is established by *Mellouli*, *Shular*, and *Ruth*, where whatever role "relating to" or "involving" played, they did not—and could not—broaden the statutorily defined terms. That's for good reason: when Congress defines a term, that's the end of the matter. And here, that cardinal rule is at its apex. Congress added the reference to "child pornography" in § 2252(b)(1) via the same Act that provided § 2256(8)'s definition of "child pornography." Put plainly, in 1996, when Congress crafted Chapter 110's definition of child pornography, it simultaneously crafted § 2252(b)(1)'s enhancement for those with prior convictions relating to "child pornography." Meaning: Congress had one definition in mind for what constituted child pornography and what would trigger the enhancement—*i.e.*, statutes whose content matched the federal definition. That is the first point to stress: "relating to" doesn't modify the content. And (without more) that point is sufficient to grant relief.

The second point is just as important: "relating to" doesn't expand the listed nouns (the conduct) beyond what Congress has proscribed. Rather, "relating to" provides flexibility in how states define the conduct. But that flexibility is not limitless—courts can't simply plop distinct crimes into that list. Put differently, "relating to" modifies the conduct, but it doesn't expand the statute's reach to crimes that Congress hasn't listed. Relevant here, it doesn't reach offenses for "accessing" images of topless minors.

After sketching out the mechanics of how "relating to" operates, the rest of the briefing falls quickly into line. The Circuits holding that the federal-state content doesn't have to match have either mis-read or mis-applied *Mellouli.* When it comes to this Court's precedent, given a careful reading, *Kraemer* aligns with *Mellouli*—it's just that *Kraemer* dealt with undefined terms. And *Kaufman* doesn't align with *Mellouli*, because the Court was clear: it wasn't applying a categorical analysis. Whether *Kaufman* is cabined or overruled, it doesn't speak to the categorical analysis—the analysis this Court must apply.

What follows is a more fulsome discussion of those points, including whether the Supreme Court's recent decision in *Pugin* affects the analysis. It doesn't. And the brief addresses whether the government's claim that thirty-one state laws cover content beyond the federal definition is accurate. Probably not. But it's beside the point since, if anything, we would be looking at the state of the law in 1996. And more importantly, policy concerns cannot undermine clear statutory text.

II.     **In response to questions 1 & 3, "relating to" must be understood in reference to the statute's text and context.**

The Supreme Court has been clear that understanding how "relating to" operates within a given statute demands examining the statute's text and its context.[1] This is a recidivist statute that triples the mandatory minimum and raises the statutory maximum. In doing so, it implicates Fifth and Sixth Amendment concerns, and the text's interpretation must bear those principles in mind. What follows addresses the Court's order to brief *Shular* and the Supreme Court's recent teaching on the categorical analysis, the function of "relating to" in § 2252, the Circuit split on this issue, and why the conduct and content proscribed by the state must match § 2252's explicit demands.

A. **Rooted in Fifth and Sixth Amendment concerns, the categorical analysis provides certainty and clarity on what triggers higher statutory maximums.**

Federal courts began using the categorical analysis in immigration cases.[2] Then when ACCA and its heightened mandatory minimums came along, *Taylor* imported it into the criminal context.[3] There, the Supreme Court had to determine what the undefined term "burglary" meant and how courts were supposed to determine if a defendant's prior conviction qualified. Respecting the constitutional implications, the Court fashioned a test with certain principles in mind.[4] First, the question was not whether the person's actual conduct (what they did) was covered by the federal statute

---

[1] *Mellouli v. Lynch,* 575 U.S. 798, 812 (2015).
[2] Alina Das, *The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law*, 86 N.Y.U. L. Rev. 1669, 1689 (2011).
[3] *Taylor v. United States*, 495 U.S. 575, 590–91 (1990).
[4] *See Descamps v. United States*, 570 U.S. 254, 269 (2013).

but whether the least serious conduct covered by the statute fit the federal term.[5] Second, the term's definition could not vary from state to state; this was a federal statute and it had to have a fixed meaning, "independent of the labels employed by the various States' criminal codes."[6] Applying those principles of notice and certainty honored a defendant's Fifth and Sixth Amendment rights—ensuring that nothing other than the fact of a prior conviction was used to elevate their sentence.[7]

The same principles of notice and certainty that colored how courts defined generic federal offenses were also in play when a statute referenced a defined term. The seminal case being *Mellouli.* There, the statute provided, in relevant part:

> Any alien who . . . has been convicted of . . . any law or regulation of a State, the United States, or a foreign country *relating to* a controlled substance (as defined in section 802 of title 21) . . .  is deportable.[8]

Looking at the statute's text and context, the Supreme Court held that the defined term controlled. And the term "relating to" couldn't be read broadly to expand the statute's reach beyond Congress's express definition.[9] Such a reading would extend "to the furthest stretch of indeterminacy, [and] stop nowhere."[10] The Court continued: "A statute with *any* overlap would seem to be *related to* federally controlled drugs … This sweeping interpretation departs so sharply from the statute's text and history that it cannot be

---

[5] *Taylor,* 495 U.S. at 592; *Borden v. United States,* 141 S.Ct. 1817, 1832 (2021).

[6] *Taylor*, 495 U.S. at 592.

[7] *Id.* at 600-02.

[8] 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added).

[9] *Mellouli*, 575 U.S. at 812.

[10] *Id.*

considered a permissible reading."[11] Instead, context dictated that the operative term was the defined term and thus it demanded a one-to-one comparison between the state and federal definitions.[12]

The Supreme Court echoed that point in *Shular,* where no one expressed any doubt that the object (or the content) of a state drug offense would have to involve a controlled substance that fit within the statutory definition.[13] Rather, the defendant sought to have the Court construct generic definitions of the conduct the statute proscribed—namely, manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance—and then compare it to the state offense.[14] The Supreme Court held that the analysis didn't turn on the state's labeling (and defining) of that conduct—after all, states define "offenses with all manner of terminology, including: trafficking, selling, giving, dispensing, distributing, delivering, promoting, and producing."[15]

In the wake of *Mellouli* and *Shular,* this Court decided *Ruth,* which turned on whether a defendant's prior conviction qualified as a "felony drug conviction."[16] That term is statutorily defined as one "relating to" controlled substances.[17] As it was in

---

[11] *Id.* at 812-813 (emphasis in original).

[12] *Id.* at 809–10.

[13] The government's recent filings in the Supreme Court confirm that this is fully accepted. Br. for the United States, *Jackson v. United States*, No. 22-6640 (U.S. Mar. 24, 2023) (arguing that the analysis should compare state offenses against the federal schedule at the time of the state offense, not at the time of the federal offense).

[14] *Shular v. United States*, 140 S.Ct. 779, 784 (2020).

[15] *Id.* at 785 (quotation omitted).

[16] *United States v. Ruth*, 966 F.3d. 642 (7th Cir. 2020).

[17] 21 U.S.C. § 802(44).

*Mellouli,* this Court looked at the text and context of "relating to" and gave clear guidance on how the categorical analysis operates when courts are confronted with a specified criteria: apply the defined term.[18] And that, of course, accords with the fundamental principle that in "all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning."[19]

### B. Consistent with *Mellouli* "relating to" modifies the listed conduct, not the statutorily defined content.

Those last three pages establish the groundwork for what follows—a deep dive into the statute's text. In relevant part, § 2252(b)(1) provides:

> Under the laws of any State *relating to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children.[20]

The term "relating to" appears at the beginning of that very long sentence and it modifies the conduct captured in the three categories of offenses that follow. The conduct states criminalize as: forms of sexual abuse, forms of child pornography offenses, and sex trafficking of children.

The term "relating to" accounts for states defining the conduct differently and provides flexibility—similar to the flexibility in *Shular*.[21] Courts don't compare the conduct against a particular federal offense, trying to determine whether the conduct is

---

[18] *Id.* at 647-48.
[19] *Cochise Consultancy, Inc. v. United States ex rel. Hunt,* 139 S. Ct. 1507, 1512 (2019).
[20] 18 U.S.C. § 2252(b)(1).
[21] *Shular*, 140 S.Ct. at 782.

a precise match.[22] Thus, whether the state calls its crime "manufacturing" or "production," "distribution" or "dispensing," "sale" or "trafficking," and whether the state proscribes a recklessness *mens rea* or makes it a strict liability offense, the prior conviction counts because it's the same core conduct captured in § 2252(b)(1). That is, Congress's decision to place "relating to" at the beginning of the sentence modifies the conduct.

As important as establishing what "relating to" does do, is establishing what it doesn't do. That takes applying the various canons of construction. Under the whole-text canon, the fixed-meaning canon, and the interpretive-direction canon, "relating to" does not (and can not) be read to modify the defined term child pornography.[23] The "whole text canon" is just a technical way of reading the statute and its operation in context.[24] As the Supreme Court observed in *Mellouli*: "[s]tatutes should be interpreted as a symmetrical and coherent regulatory scheme."[25] Here, Congress has defined the term "child pornography" for all of Chapter 110—§ 2256(8) begins: "[f]or purposes of this chapter, the term—'child pornography' means . . ." [26] Congress created the definition of "child pornography" at § 2256(8) via the very Act (the Child Pornography Prevention Act

---

[22] *Id.*
[23] Bryan Garner & Antonin Scalia, *Reading Law: The Interpretation of Legal Texts* 78 (fixed-meaning), 167 (whole-text), 174 (surplusage), 225 (interpretive-direction) (2012).
[24] *Id.* at 167.
[25] *Mellouli*, 575 U.S. at 809–10.
[26] 18 U.S.C. § 2256(8).

of 1996) in which it created the recidivist enhancements at issue here.[27] It's axiomatic (and in accord with the interpretive-direction canon) that "[w]hen a statute includes an explicit definition, we must follow that definition."[28]

Congress wrote a very precise statute, drawing clear lines for what constituted child pornography and what would trigger § 2252(b)(1)'s severe penalties. Yet reading "relating to" to broaden the term "child pornography" throws out that precision—it pushes aside canons of construction—and any prior conviction however "tangentially related to" nude minors would serve to trigger the enhancement.

The principle is often stated that purpose provides the context. The purpose of having a definition is that courts would apply it. And the purpose behind courts using the categorical analysis is that defendants' Fifth and Sixth Amendment rights are not jeopardized. What's more, the purpose can't be reduced to "Congress wanted to punish repeat sex offenders" and so therefore we read the words "relating to" as broadly as possible—"extended to the furthest stretch of their indeterminacy."[29] Courts apply the statutes as they're written and interpret them based on sound and immutable principles. They don't use policy concerns to broaden those words. Echoing the Supreme Court's words in *Mellouli*, any "construction of [§ 2252(b)(1)] must be faithful to its text."[30]

---

[27]  Child Pornography Prevention Act of 1996, Pub. L. No. 104–208, § 121, 110 Stat. 3009–26 (1996) (codified as amended in scattered sections of 18 U.S.C. ch. 110).

[28] *Tanzin v. Tanvir*, 141 S.Ct. 486, 490 (2020) (internal quotation marks omitted); *Reading Law*, *supra* note 23, at 73, 225.

[29] *Mellouli*, 575 U.S. at 812.

[30] *Id.* at 813.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Applying the words Congress chose, animated by the constitutional concerns that undergird the categorical analysis, "related to" modifies the conduct—not the content.

### C. The decisions in *Reinhart* and *McGrattan* correctly applied the canons of statutory construction in holding that the content had to match.

As the Court's order noted, this issue has split the circuits. The best way to understand the split is chronologically and with reference to the principles that each court applied, or in some cases misapplied.

In *McGrattan,* the Sixth Circuit applied the first principles that inform *Mellouli* and held that for a prior conviction to count under § 2252, the content the state proscribed had to match the federal definition.[31] It applied the categorical analysis, noting that its "underlying concern [was] the protection of the defendant's jury trial right under the Sixth and Fourteenth Amendments."[32] The question was whether the Ohio statute met the federal definition of "child pornography," and since "[a] video depicting certain exhibitions of nude breasts or buttocks might be lewd, and therefore fall within the Ohio statute without meeting the federal requirement of exhibiting the genitals or pubic area," there was no categorical match.[33]

Next, the Tenth Circuit decided *Bennett.*[34] The court engaged with *Mellouli* but rejected using the analysis because § 2252(b)(1) did not explicitly cross-reference the statutory section § 2256(8): "the enhancement statute does not limit 'child pornography'

---

[31] *United States v. McGrattan*, 504 F.3d 608, 611 (6th Cir. 2007).
[32] *Id*. at 612.
[33] *Id*. at 613.
[34] *United States v. Bennett*, 823 F.3d 1316 (10th Cir. 2016).

by linking it to the federal definition."[35] The flaw in the Tenth Circuit's reasoning did not escape the dissent's notice: "The explicit cross reference was necessary in the removal statute because the referenced definition was in a separate title of the United States Code; but *there was no need* for such a cross reference in [§ 2252(b)(1)] because the *definition in the nearby section of the same chapter of the same title explicitly stated that it applied throughout the chapter.*"[36] The dissent continued, explaining that what was important in *Mellouli* was "that there was an explicit federal definition of the term."[37] Again, the basic principle since *Blackstone's Commentaries* is: "definition sections and interpretation clauses are to be carefully followed."[38]

After *Bennett,* the Eight Circuit addressed this issue in *Mayokok.*[39] There, in a very short opinion, the court didn't discuss or even cite *Mellouli.* Instead, it held that the proper inquiry was "not whether the statutes criminalize exactly the same conduct, but whether the full range of conduct proscribed . . . *relates to* the 'possession ... of child pornography' as that term is defined under federal law."[40] And   "[t]he phrase 'relating to' carries a broad ordinary meaning, i.e., to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association or connection with."[41] Thus, the fact that the Minnesota statute reached images of contact with "clothed or unclothed pubic areas or

---

[35] *Id*. at 1323.
[36] *Id*. at 1328 (Hartz, J., concurring in part, dissenting in part).
[37] *Id*.
[38] *Reading Law, supra* note 22, at 225.
[39] *United States v. Mayokok*, 854 F.3d 987 (8th Cir. 2017).
[40] *Id*. at 992-93.
[41] *Id*. at 993.

buttocks of a human male or female" meant the defendant's prior conviction qualified.[42] That's right: while the Supreme Court has been clear that the federal definition of child pornography only reaches "hardcore" pornography, a photo of a minor's clothed butt being touched is close enough (it relates to) the federal definition and triggers the enhancement.[43]

After those two decisions, the Ninth Circuit decided *Reinhart,* and there the Court grappled with *Mellouli* and whether it (or the reasoning in *Bennett* and *Mayokok*) controlled the outcome.[44] The *Reinhart* court rejected the idea that § 2252's use of "relating to" could broaden the statutory definition of "child pornography."[45] Instead, it "conclude[d] that, applying well-established statutory principles, where there is a federal definition of 'child pornography' in the same statutory chapter as the sentencing enhancement provision at § 2252(b)(2)" meant the definition controlled.[46] The *Reinhart* court recognized that the Supreme Court had already spoken in *Mellouli*: "[B]ecause of the applicable definitional provisions, the present case is akin to *Mellouli* where, because of the statutory text and historical context, 'relating to' was given a narrower reading."[47]

---

[42] *Id.* at 992.
[43] *See New York v. Ferber,* 458 U.S. 747, 773 (1982); *see also United States v. X-Citement Video, Inc.,* 513 U.S. 64, 84 (1994) (Scalia, J., dissenting) (referring to § 2256 and noting "[w]hat is involved, in other words, is not the clinical, the artistic, nor even the risqué, but hard-core pornography.")
[44] *United States v. Reinhart*, 893 F.3d 606 (9th Cir. 2018).
[45] *Id.* at 613.
[46] *Id*.
[47] *Id.* at 614 (citing *Mellouli*, 135 S.Ct. at 1990–91).

That is, applying *Mellouli* the conclusion naturally followed—the state and federal content must match.

After *Reinhart,* the Third Circuit entered the fray with *Portanova.*[48] There, the court embraced what it considered a looser categorical approach: "Under our *looser categorical approach,* we examine the statutory definitions of Portanova's crime of conviction and determine whether it is categorically a law 'relating to the possession of child pornography,' as generically understood under federal law."[49] The opinion came out after *Shular,* but doesn't discuss or cite the case. And the court was likely the victim of bad briefing—after all, a "looser categorical approach" with definitions "as generically understood" cannot be squared with *Shular*.

That is the circuit split this Court is wading into. On the one side are *McGrattan* and *Reinhart,* which follow *Mellouli* and the basic tenets of the categorical analysis and statutory construction: defined terms take their defined meaning. On the other side of the ledger is *Bennett,* which misinterprets *Mellouli* and reads-in a demand no one would put on a statute—an embedded reference as opposed to defining the term throughout a chapter. There is *Mayokok* that doesn't even cite *Mellouli.* And then there is *Portanova,* which embraces an approach that opposes *Shular* and seems to contradict the very idea of the categorical approach. It could go without saying, but consistent with *Mellouli, Shular,* and *Ruth,* this Court should stake its flag with the Sixth and Ninth Circuits.

---

[48] *United States v. Portanova*, 961 F.3d 252 (3d Cir. 2020).
[49] *Id.* at 258 (cleaned up).

**D. The content the state statute covers must be no broader than what Congress defined and the conduct must still be captured by what Congress proscribed.**

With "related to" properly framed, the rest of the categorical analysis follows. When it comes to whether a defendant's prior conviction triggers § 2252(b)(1)'s enhancements, the Court simply has to compare the content of the state offense against the federal definition. And as the helpful charts in the other briefs establish, Wisconsin's definition of child pornography and the federal definition don't match. And so, the differing content means Liestman's conviction doesn't qualify.

The same categorical approach applies (though somewhat differently) when it comes to the conduct. Again "related to" provides flexibility to the nouns (production, possession, receipt, etc.). But that flexibility is not limitless—it does not allow the Court to read-in different crimes that Congress hasn't listed. Put differently, even the broadest application of "relating to" can't override the text that Congress wrote and the effect of the negative-implication canon on how that text is interpreted.[50]  As laid out in the other briefs, "accessing" and "possessing" child pornography are different crimes. Congress and the State of Wisconsin specifically amended their statute books to add "accessing" as a criminal offense. They are different crimes and Congress chose one (and not the other) to trigger the higher penalties. The Court must give effect to Congress adding "accessing" into part of § 2252 but not to the penalty-enhancement section.

---

[50] *See Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 174 (2009); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 486 (7th Cir. 2019); *N.L.R.B. Fin. v. SW General, Inc.*, 580 U.S. 288, 303 (2017).

Congress has set out a list of distinct crimes (the conduct) and what isn't set out doesn't count. If Congress had simply written anyone who has a state conviction "relating to production, receipt or distribution of child pornography" no one would argue that a prior conviction for possession or (for that matter) accessing child pornography would qualify. While all possession is "related to" production or receipt or distribution of child pornography—you can't possess something you didn't either receive or produce—Congress's omission of the distinct offense "possession" would mean a prior conviction for that conduct doesn't count.[51] The same principle applies with respect to "accessing"; it is a distinct crime.

In sum, "relating to" does not modify the statutorily defined *content*; thus, there must be a match between the state and federal definitions of child pornography. That's *Mellouli.* "Relating to" does modify the listed *conduct*, so there does not have to be a precise match in the conduct that the state proscribes and any particular federal offense—States can call the core conduct whatever they want and demand different elements and *mens rea*. That's *Shular.* But the defendant's prior state conviction still must be among the crimes that Congress listed in § 2251(b)(1); it still has to "necessarily entail" the listed conduct.[52] That's the negative-implication canon.

---

[51] *Reading Law, supra* note 22, at 93 (omitted-case canon).
[52] *Shular,* 140 S. Ct. at 786.

III.    **In response to question 2, this Court's analysis in *Kraemer* and *Kaufman* cannot be reconciled with *Mellouli*.**

This Court has also asked that the parties address whether *Kraemer* and *Kaufmann* properly applied *Mellouli*. The short answer is: *Kraemer*, yes; *Kaufman*, no—but an asterisk has to go with the short answer for *Kaufmann*, since the Court wasn't applying the categorical analysis, let alone *Mellouli*. Those short answers (and the qualified em-dash) take some unpacking, first with *Kraemer* and then *Kaufmann*.

When it comes to *Kraemer's* application of *Mellouli* and its principles, the Court interpreted a different (and undefined) provision in § 2252. Recall: "relating to" appears before three categories of offenses—various types of sexual abuse, specified conduct targeting "child pornography," and child sex trafficking. As relevant here, the only defined term appears in the second category with "child pornography." In *Kraemer*, the issue was whether the one-year age difference between the relevant federal offenses in Chapter 109A (under 12) and Wisconsin's first-degree-sexual-assault-of-a-child statute (under 13) meant that there was a categorical mismatch.[53] In deciding that issue, the Court held that "although the descriptions of sexual abuse set out in Chapter 109A provide a good definitional starting point in giving substance to state provisions, the explicit command of Congress in the 'relating to' language makes clear that absolute congruence of state and federal offenses is not required."[54] Unlike child pornography, there was no

---

[53] *United States v. Kraemer*, 933 F.3d 675 (7th Cir. 2019).
[54] *Kraemer*, 933 F.3d at 680.

federal definition of abusive sexual contact that applied to Chapter 110 and so a one-to-one demand between the federal and state offense wasn't necessary.[55]

The Court's reasoning on that point informs why absolute congruence *is* necessary when it comes to the defined term of child pornography. First, the Court in *Kraemer* was quick to acknowledge *Mellouli's* holding and what courts should do when "relating to" appeared with a defined term: "Because federal law only covers federally defined controlled substances, the meaning of 'relating to' is necessarily limited."[56] Second, the Court correctly noted that the context matters:  "the terms 'sexual abuse' and 'abusive sexual conduct' are not qualified by reference to any federal definition" and without reference to a federal definition 'relating to' would  retain its usual broad meaning."[57] Third, looking again at context, the Court examined the statute's historical background and found nothing to "suggest Congress intended to limit applicability of the mandatory minimum to a state statute with an absolute, 'direct link' to a particular federal abuse offense."[58]  As an aside, this Court's analysis in *Kraemer* is fully consistent with *Reinhart*, where the court explained (at length) why its holding as it pertained to the defined content did not conflict with circuit precedent addressing "sexual abuse" and "abusive sexual conduct."[59]

---

[55] *Id.*
[56] *Id.* at 683.
[57] *Id.* at 682.
[58] *Id.* at 683 (quoting *Mellouli*, 135 S.Ct. at 1990).
[59] *see also Reinhart*, 893 F.3d at 613–14.

The Court's analysis in *Kraemer* illustrates that when it comes to "relating to," — and by now, this shouldn't come as a surprise — context matters.[60] The reasons for reading "relating to" expansively as it modifies the undefined term "sexual abuse" are absent when it comes to the defined term "child pornography."[61] When a term is undefined, then "relating to" "retains its broad meaning"; when a term is statutorily defined, then Congress (as it was in *Mellouli*) intended courts to apply the definition.[62] In *Kraemer*, there was no historical background that suggested a federal definition of aggravated sexual abuse was supposed to apply.[63] But here, in the very same bill that Congress passed § 2252(b)(1)'s enhanced penalties, it also passed the definition of child pornography that expressly applies throughout Chapter 110.[64] In sum, *Kraemer* properly applied *Mellouli* when it held that context matters, that undefined terms are given a broader reading in contrast to defined terms, and when the historical background supports using that defined term, courts should (read: must) apply it.

The same cannot be said for this Court's opinion in *Kaufmann* — that opinion is not a faithful application of *Mellouli*.[65] But that's likely because of the way the argument was framed by the appellant. In *Kaufmann,* the appellant's opening brief cited *Mellouli* once

---

[60] *Id.* at 682.

[61] *Id.*

[62] *Id.* at 683; *see also Reinhart*, 893 F.3d at 613–14 (making the same point)..

[63] *Kraemer*, 933 F.3d at 683.

[64] Child Pornography Prevention Act of 1996, *supra* note 27.

[65] *United States v. Kaufmann,* 940 F.3d 377 (7th Cir. 2019).

and didn't cite it at all in reply.[66] And its argument was that Indiana's child pornography law was overbroad because (according to the defendant) it encompasses, at least theoretically, "images that do not depict an actual minor" and this included "drawings."[67]

The government's response brief argued that such a prosecution wasn't possible because non-photographic images of fictitious persons would be protected by the First Amendment.[68] Without wading into whether the vaunted Indianapolis Museum of Art was violating state law, this Court held that Kaufman's prior conviction "addresses the same harm—sexual exploitation of minors—that the enhancement provision targets."[69] And since the defense "did not argue that the Indiana statute bore no connection to, or fell outside the 'heartland' of federal possession of child pornography laws, the enhancement applied."[70] The Court was clear: "Regardless whether Kaufmann's Indiana convictions would trigger an enhancement under the categorical approach, his prior convictions support an enhancement under *Kraemer*."[71]

This Court's holding in *Kaufmann* did not faithfully apply *Mellouli*. It didn't apply a categorical approach at all. The Court was faced with a hypothetical reading of the

---

[66]  Brief of Defendant-Appellant, *United States v. Kaufmann*, 940 F.3d 377 (7th Cir. 2019) (No. 18-2742), 2019 WL 1224248 at *19;  Reply Brief of Defendant-Appellant, *United States v. Kaufmann*, 940 F.3d 377 (7th Cir. 2019) (No. 18-2742), 2019 WL 3240596.
[67] *Kaufmann,* 940 F.3d at 379.
[68] Brief for the United States, *United States v. Kaufmann*, 940 F.3d 377 (7th Cir. 2019) (No. 18-2742), 2019 WL 2713942 at *6.
[69] *Kaufmann*, 940 F.3d at 380.
[70] *Id*. at 381.
[71] *Id.*

Indiana statute that likely wouldn't pass muster under *Ashcroft v. Free Speech Coalition*.[72] And instead of simply holding that the statute has never been applied to First Amendment protected speech—drawings of fictitious nude children—it read *Kraemer* beyond its holding and figured that close enough was good enough. That is not an application of *Mellouli,* let alone a faithful one.

But *Kaufmann* doesn't control—it's the Supreme Court's teaching on the categorical analysis's application to recidivist statutes that does. This Court is now sitting *en banc* and can overrule *Kaufman* or cabin its language without overruling its holding. The one thing that can't endure is for a defendant to have his mandatory minimum and statutory maximum increased based on a finding that isn't grounded in the categorical analysis. To do so violates the Fifth and Sixth Amendments. And as spelled out in the prior briefs, only a faithful application of *Mellouli* avoids those problems.

## IV.    Anticipating the government's arguments, *Pugin* doesn't change the analysis and applying *Mellouli* will not undermine the statute's purpose.

Those points address the Court's questions for supplemental briefing, and this last section (briefly) counters two arguments that the government may raise. First, it may argue the hot-off-the-presses Supreme Court opinion in *Pugin v. Garland* alters the analysis.[73] It doesn't. And second, it may argue (or develop) the point it failed to develop in its principal brief—namely that thirty-one states' child pornography crimes will not

---

[72] 535 U.S. 234, 244 (2002).
[73] *Pugin v. Garland*, 143 S.Ct. 1833 (2023).

trigger the enhancement if the federal definition applies. Neither point alters what was established above, but this Court shouldn't have to guess at the defense's position on either.

In *Pugin*, the Supreme Court addressed a category of "aggravated felony": a prior offense "relating to obstruction of justice."[74] The Court rejected the argument that this provision required a state offense to match a federal obstruction-of-justice crime, relying in part on "relating to."[75] But *Pugin* is entirely consistent with the defense's analysis. The INA does not define "obstruction of justice," and the defense has already granted that "relating to" affords some flexibility with respect to undefined conduct terms. The government may argue that the *Pugin* Court said that if Congress had wanted Title 8's reference to "obstruction of justice" to be constrained by the description of a federal crime in Title 18, it would have cross-referenced that crime.[76] But unlike the situation in *Pugin*, § 2256(8) provides the definition of "child pornography" for Chapter 110. Nothing more is needed.[77]

The government may also argue that holding "child pornography" means what Congress said will cause numerous state statutes to not trigger the recidivist sentencing enhancement at § 2252(b)(1). The government's principal brief claimed that 31 other

---

[74] *Id.* at 1838.

[75] *Id.* at 1840–41.

[76] *Id.* at 1842.

[77] It's helpful to remember: The recidivist provision for drug traffickers who have been convicted of a "felony drug offense" (21 U.S.C. § 841(b)(1)(C)) does not cross-reference 21 U.S.C. § 802(44), but we know that's where we get the definition of that phrase—that's where we get all the definitions for Title 21. *See Ruth*, 966 F.3d at 645 (quoting § 802(44)).

states' child-pornography-related statutes target content that is broader than the federal definition—without providing anything close to 31 citations.[78] As far as the defense can discern, this figure is not accurate and the point was never developed, so it should be deemed waived.

Also, the government's claim referenced current law, so even if it were accurate, it would not be relevant. In 1996, Congress didn't define "child pornography" with reference to state laws 27 years in the future. We presume that legislators are cognizant of the law when they enact changes; the fact that states may (and have) broadened the reach of their law over the past few decades does not speak to the proper application of the statute Congress wrote in 1996.

At a fundamental level, the government's claims about state laws is nothing more than a distraction: this Court must apply the statutory definition that Congress wrote, not formulate a "generic" crime against which to compare a state offense. It is *only* in the generic-crime context that the Supreme Court has endeavored to survey state laws.[79] The Supreme Court in *Mellouli* (like this Court in *Ruth*) did not figure out the impact of its holding before applying the proper analysis.[80] Rather, just as it was in *Mellouli*, where Congress has expressly defined a term, the definition controls. Full stop. If the

---

[78] Gov. Br. at 22–23.

[79] *See Quarles v. United States*, 139 S.Ct. 1872, 1878 (2019) (generic burglary); *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 395 (2017) (generic sexual abuse of a minor); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (generic theft).

[80] *See Mellouli*, 575 U.S. at 805-06.

Federal Defender Services
of Wisconsin, Inc.

government has policy concerns about a statutory definition, it should address its concerns to Congress, not the judiciary.

**V.    Conclusion**

In the end, this case should be decided along the lines laid down in *Mellouli*. When "relating to" is properly read in context it modifies the statute's conduct, not the content. And while "related to" modifies the conduct, it doesn't rewrite the statute and make "accessing" appear among the crimes that Congress targeted. Those points flow from *Mellouli* and the canons of construction, those points control the analysis, and those points establish where (and how) the other Circuits have erred in deciding this issue. Thus, as laid out in the other briefs, the defense asks that the Court apply *Mellouli* and that this case be reversed and remanded to the district court.

Dated at Madison, Wisconsin this 16th day of August, 2022.

<div style="margin-left:40%">

Respectfully submitted,

Jay Liestman, *Defendant-Appellant*

*/s/ Joseph A. Bugni*
Joseph A. Bugni
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
joseph_bugni@fd.org

</div>

## CERTIFICATE OF COMPLIANCE

Counsel for Jay Liestman certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B), as modified by Circuit Rule 32, because it contains no more than 7,000 words, excluding the parts of the document exempt by Federal Rule of Appellate Procedure 32(f). Specifically, the brief contains 5,568 words, as counted by the word-count feature of Microsoft Word.

Dated:  August 16, 2022                    */s/ Joseph A. Bugni*
                                           Joseph A. Bugni

                                           *Counsel for Jay Liestman*

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.